UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────────────

SHAWN McDOWELL,

                                Petitioner,

        vs.

                                              9:05-CV-962

M. GIAMBRUNO,                                (C.J. Mordue)
Superintendent of Wyoming Correctional Facility
                                      Respondent.

───────────────────────────────────────────

SHAWN McDOWELL, Petitioner *Pro Se*
ALYSON J. GILL, Assistant Attorney General for Respondent
LISA E. FLEISCHMANN, Assistant Attorney General for Respondent

GUSTAVE J. DI BIANCO, Magistrate Judge

### REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation by the

Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28

U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

      Petitioner[1] brings this action for a writ of habeas corpus pursuant to 28 U.S.C.

───────────────────

     [1]According to the New York State Department of Correctional Services's online inmate look-up service, petitioner was conditionally released on parole in September 2009. According to the same website, it appears that petitioner's conviction is his only felony conviction in New York State. The United States Supreme Court has held that a presumption exists that collateral consequences are attached to criminal convictions even after an individual's release from incarceration. *Sibron v. New York*, 392 U.S. 40, 54-56 (1968). After *Sibron*, a habeas petition challenging a criminal conviction is rendered moot by a release from imprisonment "only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Sibron*, 392 U.S. at 57. Respondent has not shown the absence of collateral legal consequences, and since this appears to be petitioner's first felony conviction, he is still subject to collateral legal consequences as a result of this conviction. This action, therefore, is not moot despite petitioner's release from New York State custody.

§ 2254, challenging a judgment of conviction rendered in the Onondaga County

Court.  Petitioner was originally charged with two counts of First Degree Rape, and

one count each of First Degree Attempted Sodomy and Second Degree Assault.

Onondaga County Court Judge J. Kevin Mulroy conducted a jury trial.[2]  On April 11,

1996, during the jury's deliberations, petitioner changed his plea of not guilty, and

pleaded guilty to First Degree Rape.  On June 5, 1996, petitioner was sentenced to an

indeterminate term of incarceration of five to fifteen years.

The Appellate Division affirmed petitioner's conviction.  *People v. McDowell*,

242 A.D.2d 860, 665 N.Y.S.2d 949 (4th Dep't 1997).  The New York Court of

Appeals denied leave to appeal on December 9, 1997.  *People v. McDowell*, 91

N.Y.2d 876, 691 N.E.2d 647 (1997).  Petitioner filed two motions to vacate the

conviction pursuant to N.Y. CRIM. PROC. LAW Section 440.10 prior to the

commencement of his direct appeal.  Petitioner filed a third Section 440 motion in

November 1999, and a fourth Section 440 motion in October 2001.  Petitioner raises

four grounds in support of his petition:

> 1.  The County Court erred when it denied his motion to vacate without a
> hearing.  (Dkt. No. 1 ("Petition") at ¶ 22(A)).
>
> 2.  The trial court violated Section 310.30 of the New York Criminal
> Procedure Law when it refused to disclose the contents of a jury note.
> (Petition at ¶ 22(B)).

---

[2]Judge Mulroy instructed the jury on only three of the original four counts.  Judge Mulroy dismissed the Second Degree Assault charge prior to the summations.  (Trial Transcript ("T.") at 712).

3.  Petitioner's guilty plea is invalid because the court misinformed petitioner of the status of jury deliberations.  (Petition at ¶ 22 (C)).

4.  Petitioner was denied his right to proceed *pro se*.  (Petition at ¶ 22(D)).

Respondent has filed an answer with a memorandum of law (Dkt. No. 39), and the pertinent state court records.  For the following reasons, the court will recommend that the petition be denied and dismissed.

## DISCUSSION

**1.**   **Procedural History in Federal Court**

Petitioner filed this petition for a writ of habeas corpus on July 26, 2005, more than nine years after his guilty plea in Onondaga County Court.  (Dkt. No. 1).  In December 2005, after a preliminary review of the petition, Chief Judge Mordue issued an order stating that based on the petition alone, he was unable to determine whether petitioner filed his petition prior to the expiration of the one year statute of limitations contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[3].  (Dkt. No. 4).  Chief Judge Mordue found that petitioner's conviction became final on August 25, 1998, at the conclusion of the ninety days during which petitioner could have sought certiorari in the United States Supreme Court.  (Dkt. No. 4 at 4).  Chief Judge Mordue further found that pursuant to the AEDPA, the statute of limitations would have expired one year later, on August 25, 1999.  *Id*. Based upon the information provided in the petition, however, the court was unable

---

[3]28 U.S.C. § 2244.

to determine whether the statute of limitations had been tolled by petitioner's Section 440 motions. *Id*. Chief Judge Mordue stated that "[s]ince the Court is unable to determine whether the petition is timely filed, this action will be dismissed unless Petitioner files an amended petition **within thirty (30) days** of the filing date of this Order." *Id*. at 5.

Despite an extension of time to file an amended petition (Dkt. No. 5), petitioner failed to comply with the order, and on May 2, 2006, the petition was dismissed (Dkt. No. 6). On July 31, 2006, petitioner filed a letter motion asking the court to reconsider the dismissal. (Dkt. No. 7). In January 2007, petitioner's letter motion was denied. (Dkt. No. 8). Petitioner sought relief in the United States Court of Appeals for the Second Circuit, by making a motion for an order authorizing this court to consider a second or successive 28 U.S.C. § 2254 petition.[4] On May 15, 2007, the Second Circuit found that since the original 2005 petition was not adjudicated on the merits or dismissed with prejudice, the proposed § 2254 petition "would not be second or successive within the meaning of 28 U.S.C. § 2244(b)." (Dkt. No. 10). The Second Circuit transferred the matter back to this court to decide whether the new proposed petition should be "construed as a request to reopen the first § 2254 proceeding or as the initial pleading in a new, separate § 2254

---

[4]Pursuant to 28 U.S.C. § 2244(b)(3), prior to filing the second or successive petition in the district court, the applicant must move the appropriate Court of Appeals for an order authorizing the district court to consider the application. 28 U.S.C. § 2244(b)(3).

proceeding." *Id*.

In December 2007, petitioner made a second motion for reconsideration of

Chief Judge Mordue's January 2007 order.  On January 9, 2008, Chief Judge Mordue

granted the motion for reconsideration, and ordered that the previous judgment be

vacated and the action be reopened.  (Dkt. No. 13).  Petitioner was ordered to file an

amended petition within thirty days of the order.  *Id*.  Petitioner requested extensions

of time to file an amended petition on six occasions[5] before he filed an amended

petition on March 27, 2008 (Dkt. No. 24).

On April 16, 2008, Chief Judge Mordue dismissed the action a second time.

(Dkt. No. 25).  In his decision, Chief Judge Mordue relied on the representations in

the amended petition.  Petitioner stated that he filed his third Section 440.10 motion

on August 19, 1999, the trial court denied the motion on February 8, 2000, and the

Appellate Division, Fourth Department denied leave to appeal on August 7, 2000.

(Dkt. No. 24 at 3).  Chief Judge Mordue found that the third Section 440 motion

> tolled the statute of limitations starting on August 19, 1999 - **358** days
> after petitioner's conviction became final.  The period remained tolled
> until August 7, 2000 when the Appellate Division denied petitioner
> leave to appeal the denial of his third CPL 440 motion.  The statute of
> limitations re-commenced on August 8, 2000 (day 358) and expired on
> August 15, 2000 (365 days after petitioner's conviction became final).
> Consequently, the present action, which was originally filed on July 26,
> 2005, is time-barred.

(Dkt. No. 25 at 7) (emphasis added).  The court found that petitioner's later filing of

---

[5]*See* Dkt. Nos. 14, 15, 18, 19, 20, and 23.

a fourth Section 440 motion and an application for a writ of *error coram nobis* after the federal statute of limitations expired did not restart the statute of limitations for filing a federal habeas petition.  *Id.*

Within two weeks of Chief Judge Mordue's April 2008 decision, petitioner filed a motion for reconsideration and a notice of appeal.  (Dkt. Nos. 27 & 28).  In support of his motion for reconsideration, petitioner claimed that on March 6, 2001, he received an affidavit from Carlton Green, the Jury Foreperson in petitioner's criminal trial.  (Dkt. No. 27 at 6).  The court interpreted petitioner's statement as an attempt to argue that since petitioner discovered the "new evidence" on March 6, 2001, his one year statute of limitations ran anew from that date, pursuant to 28 U.S.C. § 2244(d)(1)(D).  (Dkt. No. 33 at 7).  Petitioner argued that the petition was timely, factoring in an additional tolling of the statute of limitations for his fourth Section 440 motion.  (Dkt. No. 27 at 7-8).

On August 8, 2008, Chief Judge Mordue granted the motion for reconsideration, and ordered that the judgment be vacated and the action reopened again.  (Dkt. No. 33).  Chief Judge Mordue ordered a response to the petition, both as to the timeliness as well as to the merits of the petition.[6]  (Dkt. No. 33 at 7-8).  Chief

---

[6]In his traverse, petitioner misstates Chief Judge Mordue's findings.  Petitioner characterizes the August 8, 2008 Order as finding "that the petition was in fact timely filed under 28 U.S.C. § 2244(d)(1)(D) and that the Statute of Limitation should be tolled from 1998 until 2001 - the time during which petitioner used reasonable diligence to obtain a 'Jury Note' from the lower Courts."  (Dkt. No. 43 at 4).  This is patently incorrect as explained above.  Chief Judge Mordue specifically stated that he took "no position" on the issue of timeliness of

Judge Mordue specifically ordered that, in addition to addressing the merits of petitioner's case,  respondent "should address whether petitioner is entitled to restart the statute of limitations based upon the alleged discovery of 'new evidence,' whether the petition is timely, and whether petitioner should be entitled to the benefit of equitable tolling."  (Dkt. No. 33 at 7-8).

## 2.    **The AEDPA Statute of Limitations**

Pursuant to the AEDPA,

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court.  The limitation shall run from the latest of

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  A judgment of conviction becomes final under the AEDPA at the conclusion of the ninety days during which the party could have sought

_____

petitioner's claims.  (Dkt. No. 33 at 8).

certiorari in the United States Supreme Court. *Hughes v. Irvin*, 967 F. Supp. 775,

778 (E.D.N.Y. 1997) (citing Rule 13 of Rules of the Supreme Court of the United

States). However, the "time during which a properly filed application for State post-

conviction or other collateral review with respect to the pertinent judgment or claim

is pending shall not be counted toward any period of limitation under this

subsection." 28 U.S.C. § 2244(d)(2). According to the Second Circuit, "properly

filed" means "simply that an application for state post-conviction relief recognized as

such under governing state procedures has been filed." *Bennett v. Artuz*, 199 F.3d

116, 123 (2d Cir. 1999).

### A.  Accrual and Expiration under 28 U.S.C. § 2244(d)(1)(A)

In his original December 2005 order directing that an amended petition be

filed, Chief Judge Mordue computed the dates on which the statute of limitations

began and ended under 28 U.S.C. § 2244(d)(1)(A). (Dkt. No. 4 at 4). The order has

not been vacated, and the dates determined by Chief Judge Mordue still control in

this case. "Therefore, his judgment of conviction appears to have become final under

the AEDPA at the conclusion of the ninety days during which he could have sought

certiorari, which was August 25, 2008. The statute of limitations expired one year

later on August 25, 1999." *Id*.

In a later, since vacated order, Chief Judge Mordue found that petitioner's first

and second Section 440 motions had no effect on petitioner's statute of limitations

because both were complete before petitioner's conviction became final.  (Dkt. No. 25 at 6).  However, pursuant to 28 U.S.C. 2244(d)(2), Chief Judge Mordue found that petitioner's third Section 440 motion tolled the statute of limitations for the period from August 19, 1999 until August 7, 2000, from the time of filing of the motion until the Fourth Department denied petitioner leave to appeal.  (Dkt. No. 25 at 6-7).  As noted above, this finding was based on the court's reliance on petitioner's representations in the amended petition.

Based upon a review of the state court records, this court finds that ***petitioner was incorrect about the date on which he filed the third Section 440 motion.*** Included in the State Court Records submitted by respondent is a copy of the third Section 440 motion.  (State Court Records ("SCR") at Ex. J).  Petitioner signed and dated the motion November 10, 1999.  *Id*.  ***The result under 28 U.S.C. § 2244(d)(1)(A) is that the statute of limitations ran <u>uninterrupted</u> from August 25, 1998 until August 25, 1999, when it expired.***  Petitoner's third Section 440 motion was filed ***more than two months after*** the August 25, 1999 expiration of petitioner's one year window to file his habeas petition.

The fact that petitioner filed a third Section 440 motion on November 10, 1999, a fourth Section 440 motion on October 26, 2001, and an application for a writ of *error coram nobis* on April 1, 2002 (*see* Dkt. No. 24 at 3), does not overcome the fact that his petition in this court is time-barred under 28 U.S.C. §2244(d)(1)(A).

The filing of state court collateral challenges **after** a petitioner's federal statute of limitations has expired does **not** restart the statute of limitations for filing a federal habeas petition.  *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (holding that AEDPA's tolling provision does not reset date from which the one-year limitations period begins to run); *see also Youngblood v. Greiner*, No. 00 CIV. 7984, 2003 U.S. Dist. LEXIS 683, at *7, n. 3 (S.D.N.Y. Jan. 21, 2003) ("*Smith v. McGinnis* . . . made clear that the limitations period does not begin anew after collateral relief is pursued"); *Scarola v. Kelly*, 99-CIV-4704, 2001 U.S. Dist. LEXIS 10631, *10-11 (S.D.N.Y. July 27, 2001) (filing of a post-judgment state court motion does not restart the one year limitations period): *Stokes v. Miller*, 216 F. Supp. 2d 169, 172 n. 3 (S.D.N.Y. 2000) ("[i]t is well-settled that post conviction or other collateral review does not start the one year statute of limitations to run anew") (citing *Smith*).  Thus, if petitioner's statute of limitations began to run pursuant to Section 2244(d)(1)(A), then this habeas petition is untimely.

### B. Statute of Limitations Under 28 U.S.C. § 2244(d)(1)(D)

In light of the statute of limitations's expiration on August 25, 1999 under 28 U.S.C. § 2244(d)(1)(A), the court must next examine whether petitioner is entitled to have the one year statute of limitations calculated from a different date as provided in the other sub-sections of 2244.  It is clear that neither section 2244(d)(1)(B) or (d)(1)(C) apply in petitioner's case.  Petitioner was neither prevented from filing a

habeas petition due to an impediment created by the State, nor is the constitutional right asserted by plaintiff "newly recognized" by the Supreme Court.  The only sub-section of the statute that might be applicable to petitioner is section 2244(d)(1)(D), which provides that the one year statute of limitations may begin to run on the date on which the factual predicate of his claims could have been discovered through the exercise of "due diligence."  28 U.S.C. § 2244(d)(1)(D).

Among petitioner's claims in this action is that Onondaga County Court Judge Mulroy provided petitioner with inaccurate information about the status of the jury's deliberations and the jury's voting.  (Petition at ¶ 22(C)).  Petitioner alleges that this inaccurate information was used "to coerce" him to change his plea to guilty. (Petition at ¶ 22(A)).  Petitioner asserts that Judge Mulroy knew the information about the jury's deliberations was inaccurate because Judge Mulroy received, at his request, a note from the jury that included the correct information.  *Id*.  Petitioner alleges that had he been informed of the actual contents of the jury's note, instead of the misinformation, he would not have pleaded guilty.  *Id*.  The issue for this court's analysis is when petitioner "discovered" this information, and whether this "discovery" is sufficient to re-start the statute of limitations.[7]

---

[7]The court notes that the ***only*** claim that petitioner would be able to have the court consider is the ***one*** claim that is associated with the allegedly "new" evidence.  Petitioner cannot "bootstrap" his time-barred claims into the new petition.  In this case, the only claim that would survive for the Section 2244(d)(1)(D) analysis is petitioner's third claim.

### 1. Jury Foreperson's Note

In the supporting documentation attached to his petition, petitioner includes a copy of a letter he sent to the jury foreperson at the foreperson's place of employment.  In the letter, dated ***April 16, 1998***, petitioner asked the foreperson to provide an affidavit regarding the jury note that was sent to Judge Mulroy during deliberations.  (Petition, Ex.[8] 9). In an affidavit dated ***March 6, 2001***, ***nearly three years after petitioner's request***, the jury foreperson states that on April 11, 1996, while the jury was deliberating on petitioner's case, Judge Mulroy called the jury into the courtroom shortly before 6 p.m. and asked about the status of the verdicts.

> Judge Mulroy strongly suggested that we send him a note revealing whether or not we reached any type of verdict on the counts and if we did reach a verdict he wanted to know what they [sic] were.  He also wanted to know whether or not we were deadlocked on some counts.  At 5:52 P.M. we were sent back into the juryroom and at 5:57 P.M. I sent Judge Mulroy a note that contained the verdicts of "NOT GUILTY" on the First and Third Counts and UNDECIDED on the Second Count.

(Petition, Ex. 10; SCR, Ex. O).

### 2. Analysis

In his amended petition, petitioner states that his conviction became final on July 1, 2005 when the New York Court of Appeals concluded its "direct review." (Amended Petition at 4).  Petitioner is confused about the terminology under the

---

[8]The petition consists of the printed form to begin a writ of habeas corpus, nine pages of text associated with various paragraphs on the printed form containing additional information, and twenty unnumbered exhibits.  The court has numbered the exhibit pages for ease of citation.

statute.  July 1, 2005 is the date the New York Court of Appeals denied leave to

appeal petitioner's fourth motion to vacate.  Petitioner's conviction was no longer on

"direct review," but was being considered as the result of collateral motions to

vacate.  In any event, the conclusion of "direct review" in only considered under

section 2244(d)(1)(A).  The court notes that the Court of Appeals concluded its

direct review of petitioner's conviction on December 9, 1997, when it denied

petitioner leave to appeal the Appellate Division's affirmance of the conviction.

*People v. McDowell*, 91 N.Y.2d 876, 691 N.E.2d 647 (1997).  Petitioner is

attempting to argue that the statute of limitations should run anew from March 6,

2001, the date on which the jury foreperson provided petitioner with an affidavit.

Petitioner filed his fourth Section 440.10 motion on October 26, 2001, based

upon the foreperson's affidavit.  (SCR, Ex. N).  The court found that petitioner's

contentions about the affidavit were "foreclosed by his guilty plea," and the motion

was denied on April 29, 2002.  (SCR, Ex. R).  The Appellate Division granted leave

to appeal on December 20, 2002.  (SCR, Ex. S).[9]  Petitioner's counsel filed the

---

[9]Petitioner filed a motion for a writ of *error coram nobis* in the Appellate Division on
April 2, 2002.  (SCR, Ex. T).  It is unclear why petitioner filed this motion.  Generally, a motion
for a writ of *error coram nobis* regards the ineffective assistance of appellate counsel.  *People v.
Bachert*, 69 N.Y.2d 593, 509 N.E.2d 318 (1987).  In any event , the Appellate Division
summarily denied the motion on December 12, 2002.  (SCR, Ex. V).  *People v. McDowell*, 300
A.D.2d 1154, 751 N.Y.S.2d 430 (4th Dep't, 2002).  Petitioner made a motion for reargument,
which was denied by the Fourth Department on March 21, 2003.  (SCR, Ex. W).  *People v.
McDowell*, 303 A.D.2d 1060, 755 N.Y.S.2d 691 (4th Dep't, 2003).  The Court of Appeals denied
leave to appeal on April 7, 2003.  (SCR, Ex. X).  *People v. McDowell*, 99 N.Y.2d 656, 790
N.E.2d 295 (2003).

appeal in September 2004.  On February 4, 2005, the Fourth Department affirmed the

decision of the Section 440 court, finding that the "note was clearly not a request for

further instructions or information and, although issues under section 310.30 may be

reviewed pursuant to section 440.10(1)(f), the note did not implicate the need for the

procedures pursuant to *People v. O'Rama*."  *People v. McDowell*, 15 A.D.3d 840,

789 N.Y.S.2d 378 (4th Dep't, 2005) (internal citations omitted).  The Court of

Appeals denied petitioner leave to appeal on July 1, 2005.  *People v. McDowell*, 5

N.Y.3d 791, 835 N.E.2d 672 (2005).

Petitioner appears to argue that the statute of limitations began to run on

March 6, 2001, when the jury foreperson provided petitioner with the affidavit.  If

petitioner is correct, the statute of limitations would have run for several months

until October 26, 2001, when he filed his fourth Section 440 motion.  The statute of

limitations would then have been tolled from October 26, 2001 until July 1, 2005,

when the Court of Appeals denied leave to appeal.  According to this reasoning,

petitioner's filing of this action on July 26, 2005 would be well within the one year

statute of limitations.  Respondent appears to assume, for purposes of this argument,

that the jury foreperson's affidavit may, in fact, constitute the factual predicate[10] for

---

[10]The court notes that petitioner has, in fact, been making this particular claim about the jury's deliberations from just days after he changed his plea to guilty and effectively ended the jury's deliberations.  Petitioner has alternately argued that his counsel or Judge Mulroy coerced the guilty plea.  *Cf.* SCR at Ex. A and Petition.  It is unclear whether the jury foreperson's affidavit supports petitioner's claim in light of the court's review of a copy of the actual jury note in question, which petitioner has also provided.  (Dkt. No. 43, Ex. 5 at 2).  Petitioner was correct

plaintiff's claim.  (Dkt. No. 39, *Memo*. at 20-21).   Respondent argues that petitioner

has failed "to demonstrate that he exercised due diligence" in securing the jury

foreperson affidavit, and that the petition is untimely even under 28 U.S.C. §

2244(d)(1)(D).  *Id*.

    In *Wims v. United States*, the Second Circuit stated that the statute of

limitations period runs "when the facts supporting the claim or claims presented

***could have been*** discovered through the exercise of due diligence . . . regardless of

whether petitioner actually discovers the relevant facts at a later date."  *Wims v.*

*United States*, 225 F.3d 186, 188 (2d Cir. 2000)(emphasis added)(quoting 28 U.S.C.

§2255(f), which sets forth the factual predicate basis for determining the statute of

limitations in cases involving petitioners seeking habeas relief from *federal* custody);

*Ljuljdjurdaj v. New York*, 06-CV-0090 (GLS), 2009 U.S. Dist. LEXIS 6438, *12

(N.D.N.Y. Jan. 29, 2009).  "A petitioner whose claim is based on newly discovered

evidence has the burden of showing that he could not have discovered such evidence

earlier with due diligence."  *Carter v. Connell*, 9:07-CV-185, 2007 U.S. Dist. LEXIS

37719, *7-8 (N.D.N.Y. May 23, 2007) (citing *United States v. White*, 972 F.2d 16, 20

(2d Cir. 1992)).   The statute "does not require the maximum feasible diligence, only

---

that the jurors voted for acquittal on the attempted sodomy charge, but at best, the jury was
undecided on the other two counts, leaning towards ***not guilty*** (11-1) on the first of the two first
degree rape charges, but leaning (9-3) towards a ***guilty verdict*** on the first degree rape charge
based on accessory liability.  *Id*.  Petitioner and the jury foreperson are ***incorrect*** when they state
that petitioner was acquitted on two of the three counts, and merely undecided on the third.  In
any event, the court proceeds to the due diligence analysis.

'due,' or reasonable, diligence." *LoCascio v. United States*, 395 F.3d 51, 55 (2d Cir.

2005) (citing *Wims*, 225 F.3d at 190 n. 4).  In a case finding that a petitioner had

exercised due diligence, this court held that "even if it was possible for a petitioner to

discover facts or evidence relevant to his defense, the petitioner need not actually

discover those facts or evidence to exercise due diligence so long as the petitioner

***reasonably pursued*** discovering all relevant evidence concerning his defense."

*Perez*[11] *v. United States*, 502 F. Supp. 2d 301, 305 (N.D.N.Y. 2006) (emphasis

added).

In his traverse, petitioner concedes that he discovered the purported contents

of the jury's note to Judge Mulroy very shortly after he pleaded guilty on April 11,

1996.  (Dkt. No. 43 at 4).  Petitioner states that on "[t]he ***following morning after***

***trial*** . . . he had learned that the jury was going to acquit him on Counts 1 and 3 and

was undecided on the Second Count."  *Id*. (emphasis added).  Within days of

learning this information, petitioner filed his first Section 440 motion claiming that

his trial counsel coerced him to plead guilty and later informed petitioner "that the

jury was leaning toward acquitling [sic] me on 2 of the charges on the Indictment,

and was deadlocked on the other."  (SCR, Ex. A at 1).

Though petitioner argues that the jury foreperson's affidavit is new

information, petitioner was aware of the underlying facts almost immediately after he

---

[11]In *Perez*, the issue was whether or not an individual who had previously been deported
by the United States could have discovered that he was, in fact, a United States citizen.

pleaded guilty.  From the beginning, however, petitioner has misunderstood the

import of the information that the jury conveyed to Judge Mulroy.  On April 17,

*1996*, petitioner's trial counsel wrote a letter to petitioner and attempted to explain

that

> the jury was apparently leaning toward acquitting you on the first and
> third counts of the indictment but were [sic] prepared to convict you on
> the second count of the indictment which could have led to exposure in
> the 8 1/3 to 25 year range.  I cannot and will not represent to the Court
> that you were pressured into entering the plea, particularly in light of the
> fact that the plea offer had been on the table during the entire time of the
> trial.

(Dkt. No. 43, Ex. 8).  Instead of understanding that the imposed sentence is less than

the sentence that he was facing with a guilty verdict on the charge to which he

pleaded guilty, petitioner focuses on counsel's sentence *before* the excerpt above.

In the sentence just prior to the excerpt above, petitioner's counsel wrote,

"[o]nce again, I want to advise you as I did on Friday, April 12, 1996, that I believe

you have been misinformed as to the jury deliberation process and what the jury was

about to conclude."  *Id*.  In his traverse, plaintiff argues that this sentence means that

his counsel was stating "that *Judge Mulroy* had 'misinformed'" petitioner about the

status of deliberations.  (Dkt. No. 43 at 13).  This argument appears to be based on an

incorrect reading of trial counsel's statement to petitioner.  Trial counsel was *not*

telling petitioner that *Judge Mulroy* had engaged in any impropriety, nor was his

counsel making any statement about the jury's deliberations.  Counsel was simply

telling petitioner that he misunderstood what had happened during jury deliberations. This interpretation is clear based on counsel's statement that he would refuse to argue that petitioner was "pressured" into pleading guilty.  (Dkt. No. 43, Ex. 8).

In any event, petitioner argues that he exercised due diligence in seeking evidence about the jury's deliberations.  (Dkt. No. 43 at 9).  Petitioner refers this court to Exhibits 1-4 attached to his traverse to rebut respondent's argument that petitioner had failed to show due diligence.  (Dkt. No. 43 at 9).  Exhibit 1 is a letter from a Staff Attorney at the Hiscock Legal Aid Society requesting a third extension of time to make petitioner's direct appeal.  (Dkt. No. 43, Ex. 1).  The Staff Attorney was attempting to locate *petitioner's* **pro se** *motion* to withdraw his plea.  *Id*.  The attorney stated that "[t]he County Clerk's Office does not have a copy in its file and I have been denied access to the Judge's file."  *Id*.  Exhibit 2 consists of one letter from the trial's court reporter dated April 29, 1998, and one letter from an Associate Court Clerk dated May 5, 1998.  (Dkt. No. 43, Ex. 2).  The court reporter stated

> In response to your letter requesting jury notes and judge's response during jury deliberation, I cannot help you.  I have filed a full and complete transcript of the proceedings.  From my review of the record, the judge verbally spoke to the jury, which is contained in the transcript, and before there was a response from the jury you entered a plea. However, you should confer with an attorney on the matter.

(Dkt. No. 43, Ex. 2 at 1).  In the letter from an Associate Court Clerk, the clerk referred petitioner to the court reporter for information "about the availability of the material you wish to acquire and the cost of such material."  *Id*. at 2.  Exhibit 3 is a

second letter from the court reporter to petitioner dated May 11, 1998. (Dkt. No.43, Ex. 3). The court reporter stated that she only kept a record of the spoken word in court, and that she did not retain jury notes or exhibits. *Id*. Exhibit 4 is petitioner's April 16, 1998 letter to the jury foreperson requesting an affidavit. (Dkt. No. 43, Ex. 4).

The question before this court is whether petitioner attempted, with due diligence, to obtain the information about the jury deliberations during the period from the guilty plea (April 11, 1996) until he actually obtained the affidavit (March 6, 2001). Petitioner engaged in a flurry of activity in the spring of 1998, in the months following the New York Court of Appeals's denial of leave to appeal the conviction in December 1997. Petitioner has not submitted any evidence showing that he made ***any effort whatsoever after April 1998*** to follow up with the jury foreperson, or attempt to contact any other member of the jury on this issue. Petitioner cannot be said to have ***reasonably pursued*** the discovery of this "evidence." The court does not find that petitioner's attempts were made with due diligence based on his one letter to the jury foreperson that resulted in an affidavit almost three years later. The court notes that due to petitioner's fundamental misunderstanding of what is contained in the actual jury note, plus his attorney's letter, even if he had submitted his petition in timely fashion, his claims are ultimately without substance and meritless.

After petitioner failed to obtain a copy of the jury note from the court or the court reporter in April and May 1998, and did not receive a response from the jury foreperson, petitioner apparently ceased all efforts to obtain information about the jury's deliberations.  Petitioner did not make any further effort to obtain the information.  Petitioner simply has not shown that he exercised due diligence[12] in order to obtain the "new evidence."  On that basis, the court cannot find that petitioner's eventual receipt of the affidavit in 2001 should re-start the statute of limitations under 28 U.S.C. § 2244(d)(1)(D).  This court finds that 28 U.S.C. § 2244(d)(1)(D) should not apply in this case, and that the applicable section is 28 U.S.C. § 2244(d)(1)(A).  As stated above, the statute of limitations under 28 U.S.C. § 2244(d)(1)(A) expired on August 25, 1999.  Accordingly, after reviewing the papers in this case and the applicable law, and for the above-stated reasons, this action should be ***dismissed with prejudice as untimely filed***.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten days

---

[12]For the same reasons, petitioner is not entitled to equitable tolling.  "Equitable tolling applies only in the 'rare and exceptional circumstance[].'" *Smith*, 208 F. 3d at 17.  Furthermore, petitioner must show "that extraordinary circumstances prevented him from filing his petition on time." *Id*. (citing *Johnson v. Nyack Hosp.* 86 F.3d 8, 12 (2d Cir. 1996)).  Under *Johnson*, the party seeking equitable tolling "must have acted with ***reasonable diligence*** throughout the period he seeks to toll." *Id*.  This is not a rare or exceptional circumstance, nor was petitioner prevented from filing his petition in a timely manner.  Petitioner also failed to act with reasonable diligence during the time period from 1998 until 2001.

within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Date: November 20, 2009

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge

21